BENNY SIMS, Plaintiff-Employee v. CHARMES/ARBY'S ROAST BEEF, Defendant-Employer, and/or NORTH CAROLINA SELF-INSURERS FUND, Defendant-Carrier

No. COA99-1402

(Filed 6 February 2001)

**1. Workers' Compensation— Industrial Commission—authority to sit en banc**

N.C.G.S. § 97-85 does not provide the Industrial Commission with the express authority to sit en banc to hear cases nor does it evince any intent by the legislature that the Commission do so. The Industrial Commission is an administrative agency of the State and has only the limited power and jurisdiction either expressly or impliedly granted by the legislature to enable it to administer the Workers' Compensation Act.

**2. Workers' Compensation— Form 60—no presumption of disability**

The Industrial Commission correctly determined that filing a Form 60 admitting compensability and liability for plaintiff's

injury did not entitle plaintiff to a presumption of disability, as would have been the case had the parties filed a Form 21.

### 3. Workers' Compensation— disability—operation of independent businesses

The Industrial Commission correctly found that plaintiff failed to sustain his burden of proving temporary total disability where plaintiff continued to operate three businesses following his injury and that gross profits from those businesses expanded following the injury.

### 4. Workers' Compensation— average weekly wage—calculation—use of actual wages

The Industrial Commission did not err in its calculation of plaintiff's average weekly wage pursuant to N.C.G.S. § 97-2(5) where plaintiff's weekly wages were undisputed and the Commission was justified in using plaintiff's actual wages.

Appeal by plaintiff from opinion and award entered 18 December 1997 and order entered 7 October 1998 by the North Carolina Industrial Commission; appeal by defendants from order of the North Carolina Industrial Commission entered 22 June 1999. Heard in the Court of Appeals 14 August 2000.

*David P. Stewart for plaintiff.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis, III, Linda Stephens, George Pender, and Tracey L. Jones, for defendants.*

*Lore & McClearen, by R. James Lore; Patterson, Harkavy & Lawrence, L.L.P., by Henry N. Patterson, Jr., and Martha A. Geer, amicus curiae, for the North Carolina Academy of Trial Lawyers.*

*Lewis & Roberts, by Richard M. Lewis, Timothy S. Riordan and Devin F. Thomas, amicus curiae, for the North Carolina Association of Defense Attorneys.*

MARTIN, Judge.

Benny Sims ("plaintiff") injured his back lifting a case of beef while working for Charmes/Arby's Roast Beef (along with North Carolina Self-Insurers Fund, "defendants") on 25 October 1994. Defendants immediately filed Industrial Commission Form 19 and

began making temporary disability payments effective the day of plaintiff's injury; thereafter, defendants filed a Form 60 admitting liability and plaintiff's right to compensation. Dr. Richard O'Keeffe, Jr., diagnosed plaintiff with multiple bulging discs. On 15 June 1995, plaintiff was given a ten percent permanent disability rating to his back.

Meanwhile, defendants obtained evidence that plaintiff was working on a self-employed basis and promptly filed a Form 24 Application to Terminate Payment of Compensation. On 25 July 1995, a deputy commissioner approved defendants' Form 24 and terminated plaintiff's benefits effective 20 March 1995, finding that plaintiff was self-employed and earning income. Plaintiff requested a hearing. At the hearing, held on 10 September 1996, plaintiff testified that he owned a number of business enterprises, including a photography studio and tax preparation service, and that he owned and operated these businesses before, during, and after his employment with defendant. The evidence also showed that plaintiff began working at a K-Mart store on 29 July 1996.

The deputy commissioner awarded plaintiff compensation for temporary total disability from 1 November 1995 through 1 December 1995 because of a re-injury to plaintiff's back which occurred 31 October 1995, as well as 30 weeks of permanent partial disability; defendants were awarded a credit for 38 weeks of compensation payments made between 25 October 1994 and 25 July 1995. The credit awarded to defendants offset the award to plaintiff, who received no further compensation.

Plaintiff appealed to the Full Commission. On 18 December 1997, the Commission entered an opinion and award in which it concluded plaintiff was not entitled to a presumption of continuing temporary total disability because the parties had never entered into a Form 21 agreement; further, the Commission upheld the award of the deputy commissioner, finding that plaintiff failed to meet his burden of proving temporary total disability, in part because he earned income during the period in which he collected disability payments from defendants.

Plaintiff's Motion for Reconsideration, in which he contended defendants' execution of the Form 60 entitled him to a presumption of continuing temporary total disability, was denied. Plaintiff then moved for an *en banc* hearing before the entire Industrial Commission. Plaintiff's motion was granted and the Full Commission,

sitting *en banc*, heard oral arguments on 7 January 1999. On 22 June 1999, the Commission filed an order in which it declined to rule *en banc*, and provided that the time for filing an appeal from its opinion and award of 8 May 1997 "shall lie from the date of the filing of this Order." Plaintiff and defendants appeal.

---

Plaintiff assigns error to the Full Commission's opinion and award filed 18 December 1997, and its subsequent order filed 7 October 1998, which concluded that plaintiff was not entitled to a presumption of continuing temporary total disability based on defendants' filing of the Industrial Commission Form 60. Further, plaintiff contends the Commission erred when it determined plaintiff had failed to prove his temporary total disability because he had earned income from self-employment businesses during the time period in which he collected payments from defendants. Finally, plaintiff assigns as error the Commission's method for calculating plaintiff's average weekly wage based on G.S. § 97-2(5).

In their separate appeal from the 22 June 1999 order, defendants assert the Industrial Commission erred when it granted plaintiff's request to reconsider the matter sitting *en banc*, and assign error to the provisions of the *en banc* order purporting to extend the deadline for filing an appeal from the Commission's earlier orders.

[1] We begin by addressing defendants' assignment of error regarding the Industrial Commission's authority to sit *en banc*. The Industrial Commission is an administrative agency of the State and has only the limited power and jurisdiction either expressly or impliedly granted by the legislature to enable it to administer the Workers' Compensation Act. *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 337 S.E.2d 477 (1985). The procedure for the Full Commission to hear cases is established by G.S. § 97-85. The statute provides:

> If application is made to the Commission within 15 days from the date when notice of the award shall have been given, the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award: Provided, however, when application is made for review of an award, and such an award has been heard and determined by a commissioner of the North Carolina Industrial Commission, the commissioner who heard and determined the dispute in the first instance, as specified by G.S. 97-84, shall be

disqualified from sitting with the full Commission on the review of such award, and the chairman of the Industrial Commission shall designate a deputy commissioner to take such commissioner's place in the review of the particular award. The deputy commissioner so designated, along with the two other commissioners, shall compose the full Commission upon review. Provided further, the chairman of the Industrial Commission shall have the authority to designate a deputy commissioner to take the place of a commissioner on the review of any case, in which event the deputy commissioner so designated shall have the same authority and duty as does the commissioner whose place he occupies on such review.

The statute does not provide the Commission with the express authority to sit *en banc* to hear cases nor does it evince any intent by the legislature that the Commission do so. Indeed, the statute is explicit in setting forth that, for the purposes of reviewing awards, the Full Commission shall be composed of three member panels, appeals from which are taken to the Court of Appeals.

Because the Commission is without authority to sit *en banc*, it follows that its 22 June 1999 order, including the provisions extending the time for filing an appeal from the earlier orders, is a nullity and must be vacated. Nevertheless, in the exercise of the discretion granted us by N.C.R. App. P. 2, we treat plaintiff's purported appeal as a petition for writ of certiorari, allow the petition, and proceed to consider plaintiff's appeal on the merits.

**[2]** Plaintiff argues the Commission erred when it concluded that plaintiff was not entitled to a presumption of continuing temporary total disability based on defendants' filing of the Industrial Commission Form 60, entitled "Employer's Admission of Employee's Right To Compensation Pursuant to N.C. Gen. Stat. 97-18(b)." Form 60, plaintiff argues, carries with it the same presumption of continuing disability as the Form 21. Although this question has never been addressed directly by our courts, a careful reading of G.S. § 97-18(d) and recent case law requires that we decide the issue adversely to plaintiff's contentions.

As a general rule, an employee is entitled to compensation if he is disabled as a result of an injury by accident occurring in the course of employment. *Rhinehart v. Market*, 271 N.C. 586, 157 S.E.2d 1 (1967). The employee has the burden of proving a disability as a result of a work-related injury. One method for establishing disability

is the use of the Industrial Commission Form 21; written agreements between employers and employees using Form 21 and approved by the Commission qualify as awards of the Commission and entitle employees to a presumption of disability. *Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 476 S.E.2d 434 (1996).

The General Assembly has also provided more direct methods for employers to compensate injured employees without admitting liability. G.S. § 97-18(b) permits an employer to admit that the injury suffered by the employee is compensable, that the employer is liable for compensation, and to notify the Commission of such action by use of the Form 60, "Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b)." By contrast, G.S. § 97-18(d) provides the employer with the option of making payments to an injured employee for a period of 90 days without admitting the compensability of or the liability for the injury. After the 90-day period, however, if the employer does not contest liability or compensability, "it waives its right to do so and the entitlement to compensation becomes an award of the Commission pursuant to G.S. § 97-82(b)." *Higgins v. Michael Powell Builders*, 132 N.C. App. 720, 724, 515 S.E.2d 17, 20 (1999).

In *Olivares-Juarez v. Showell Farms*, 138 N.C. App. 663, 532 S.E.2d 198 (2000), the employer made direct payments to the injured employee pursuant to G.S. § 97-18(d), using the Industrial Commission Form 63, Payment of Compensation Without Prejudice. The employer, however, made these payments beyond the 90-day statutory period, from 14 August 1995 until 2 January 1996. Thus, this Court held, according to the statute, the employer had waived its right to contest the compensability of or its liability for the employee's injury. The status of the employer who pays compensation without prejudice beyond the statutory period is therefore the same as the employer who files Form 60 pursuant to G.S. § 97-18(b). That is, in both circumstances the employers will be deemed to have admitted liability and compensability. In *Olivares-Juarez*, the Court held that because a Form 21 agreement was not approved by the Commission, "a presumption of disability in favor of plaintiff did not arise." 138 N.C. App. at 667, 532 S.E.2d at 202. The employer in *Olivares-Juarez*, therefore, was held to have admitted compensability and liability, but not the employee's disability. Accordingly, admitting compensability and liability, whether through notification of the Commission by the use of a Form 60 or through paying benefits beyond the statutory period provided for in G.S. § 97-18(d), does not

create a presumption of continuing disability as does a Form 21 agreement entered into between the employer and the employee.

In the present case, defendants filed a Form 60 admitting compensability and liability for plaintiff's injury. The Commission, in its order filed 7 October 1998, determined that use of the Form 60 did not entitle plaintiff to a presumption of continuing temporary disability as would have been the case had the parties filed the Form 21 agreement. Based on our reading of both the statute and the decision in *Olivares-Juarez*, this Court must agree. The burden of proving disability, therefore, remains with plaintiff.

[3] Plaintiff next contends the Commission erred when it determined plaintiff had failed to prove his temporary total disability because he had earned income from self-employment businesses during the period in which he collected workers' compensation payments. Specifically, plaintiff asserts that since he conducted these businesses before his injury, the businesses represented concurrent employment and could not be considered when determining whether his earning capacity had diminished as a result of his injury.

Under the Workers' Compensation Act, a disability is defined as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Thus, an employee who cannot command wages in the competitive job market because of injury will be classified as disabled under the statute. An employee's earning capacity "is based on his ability to command a regular income in the labor market." *McGee v. Estes Express Lines*, 125 N.C. App. 298, 300, 480 S.E.2d 416, 418 (1997). In *McGee*, this Court held that an employee's ownership of a business could support a finding of earning capacity if the employee is actively engaged in the business, but only if the work involves skills marketable in the labor market. *Id.* Thus, the relevant inquiry, even in circumstances involving an employee's on-going business operations, is whether the injury has diminished the employee's earning capacity.

In the present case, the Full Commission found that plaintiff operated three businesses following his injury on 25 October 1994, and that gross profits from these businesses expanded considerably in 1995 compared to 1994 figures. According to the Commission, plaintiff's photography and Race Fan businesses increased gross profits from $14,360.00 in 1994 to $23,580.00 in 1995. Based in part on these findings, the Commission concluded this increase in gross prof-

its reflected plaintiff's ability to earn wages. Further, the Commission found plaintiff made no attempt to find employment between 25 October 1994 and 25 July 1995; in fact, he did not accept a new job until 29 July 1996, when he was hired as a manager-trainee at K-Mart. Plaintiff has the burden of proving " . . . not only that he had obtained no other employment but that he was *unable* to obtain other employment." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982) (emphasis in original). Here, the Commission found that plaintiff failed to prove he was unable to earn income as a result of his on-the-job injury; indeed, the evidence shows that plaintiff earned income throughout the time he received temporary disability payments from defendants. The Commission's finding that plaintiff failed to sustain his burden of proving temporary total disability between 25 October 1994 and 25 July 1995 is supported by competent evidence. Plaintiff's assignment of error is therefore overruled.

[4] Finally, plaintiff assigns as error the Commission's method of calculating his average weekly wage pursuant to G.S. § 97-2(5). Because of his brief period of employment, plaintiff contends his wage should have been calculated using a comparable employee's 52-week wage. We disagree.

G.S. § 97-2(5) establishes several methods for calculating wages under the Workers' Compensation Act. As pertinent to this appeal, the statute provides:

> Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

Thus, in circumstances where determining the weekly wage is too uncertain, the statute provides an alternative: using the wage of a comparable employee.

In this case, the Commission had ample evidence to permit the weekly wage to be calculated based on plaintiff's actual wages during his employment. Plaintiff earned $240.00 a week in a probationary period as a manager-trainee. Although some dispute arose concerning the test administered to plaintiff during this training period, it appears undisputed that some trainees fail to advance to permanent employment. If the Commission were to determine plaintiff's weekly wage by using the wages earned by a permanent employee, it would have had to make the assumption that plaintiff would one day move into a permanent position. The statutory language of G.S. § 97-2(5) permits the use of a comparable employee's wages when it is impractical to use the injured employee's weekly wages. Here, plaintiff's weekly wages were undisputed and the Commission was justified in calculating plaintiff's wage using his actual wages. This assignment of error is overruled.

For the foregoing reasons, we affirm both the Full Commission's opinion and award filed 18 December 1997 and its subsequent order filed 7 October 1998.

Affirmed.

Chief Judge EAGLES and Judge HORTON concur.