***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY RULING
Plaintiff's motion to reopen the record to take the deposition of Dr. Clarence Ballenger and introduce plaintiff's medical records from his treatment with Dr. Ballenger is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On 21 July 1998 an employment relationship existed between plaintiff and defendant-employer.
5. A Form 60 was filed with the Industrial Commission admitting liability for plaintiff's claim, and indicating that plaintiff's average weekly wage on the date of the injury giving rise to this claim was $520.00. This average weekly wage yields a compensation rate of $346.68.
6. In addition to the doctors' deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence in this matter stipulated exhibit one, consisting of fifteen tabbed items that include documents such as medical records, employment records, and Industrial Commission forms and orders.
7. The issues to be determined by the Commission are whether plaintiff is entitled to receive ongoing indemnity and medical compensation, and whether plaintiff is entitled to his choice of treating physician. Plaintiff also has asked for an assessment of attorney's fees.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was employed as a carpenter with defendant-employer, sustained an admittedly compensable injury by accident to his right leg on 21 July 1998. Plaintiff suffered a laceration of his right thigh with resulting deep muscle injury. On the same day of plaintiff's injury, Dr. David Harshman performed a surgical procedure to examine, clean, and close the wound. At the time, Dr. Harshman noted that there was no evidence of neurovascular injury but that the laceration was deep into the quadriceps muscle. Plaintiff was discharged from Craven Regional Medical Center on 24 July 1998 at which time he seemed to be doing well and recovering from the deep laceration injury.
2. On 12 August 1998 Dr. Harshman noted that plaintiff's wound was well-healed but that plaintiff was experiencing stiffness and weakness, and therefore needed a course of physical therapy. Dr. Harshman referred plaintiff to Dr. Christopher Delaney, a physical medicine and rehabilitation physician, for further recommendations for rehabilitation, to assist plaintiff in obtaining maximum medical improvement, and to minimize plaintiff's disability.
3. Dr. Delaney treated plaintiff from October through December 1998. Throughout the course of his treatment of plaintiff, Dr. Delaney noted that plaintiff had had an excellent surgical repair of the significant injury, and objectively had a very good recovery. Dr. Delaney's treatment of plaintiff, including diagnostic testing, confirmed that plaintiff's laceration injury was limited to significant muscle injury, with only slight involvement of the nerves or bone. Dr. Delaney increased plaintiff's physical therapy in an attempt to minimize plaintiff's recovery time. On 13 November 1998, Dr. Delaney released plaintiff to return to work with a 25 pound lifting restriction.
4. During the course of Dr. Delaney's treatment of plaintiff, he noted symptom magnification on the part of plaintiff, although Dr. Delaney did recognize a psychological component. In fact, it was Dr. Delaney's opinion that plaintiff's disability was disproportionate to the physical findings. On 3 December 1998 Dr. Delaney indicated that plaintiff had completely healed from his injury, was in need of no additional treatment, and was at maximum medical improvement. Dr. Delaney assigned a two percent permanent partial impairment rating of plaintiff's lower extremity. At his deposition taken on 6 June 2000 Dr. Delaney stated that plaintiff was capable of returning to work with no restrictions as of 3 December 1998, with no significant residual disability.
5. When plaintiff began his job with defendant-employer, he was primarily doing punch-out work or minor items that needed to be done to actually complete a project, such as adjusting door locks, painting, and caulking. Plaintiff's job was later changed to a hardware installer. In this capacity, plaintiff, along with a crew of several other men, installed door locks, bath accessories, kick plates, weather stripping, and screen doors. Plaintiff also did some carpentry work. Plaintiff's job required him to stand, bend, and occasionally stoop. The lifting required in this job was not excessive; occasionally he had to lift up to 25 pounds. Plaintiff also had to use tools in his job, including a tool belt, which may weigh up to 20 pounds, as well as hammers, screw drivers, and saws.
6. When Dr. Delaney released plaintiff to return to unrestricted work in December 1998, Alfonso Barrera, defendants' general superintendent, contacted plaintiff about returning to work in his former job as a carpenter/hardware installer. Plaintiff informed Mr. Barrera that he did not believe he was capable of returning to work in that capacity. Plaintiff never reported or returned to work for defendant-employer in any capacity.
7. According to the employment records received into evidence in this matter, defendants considered plaintiff to have voluntarily resigned his employment with the employer on 16 December 1998, after he was released by Dr. Delaney but did not report to work. Defendants assert that plaintiff was capable of attempting the hardware installation job that was available with the employer and filed a Form 24 application which was denied by the Industrial Commission. Although Dr. Delaney did not review or approve a job description for said job, in his deposition taken on 6 June 2000, Dr. Delaney offered the opinion that plaintiff could perform his previous job as a carpenter.
8. On 5 March 1999 plaintiff returned to Dr. Harshman, who felt that Dr. Delaney's treatment was appropriate and that he had nothing further to offer plaintiff, but that a psychiatric evaluation might be indicated. Plaintiff did not undergo medical treatment from 5 March 1999 until he saw Dr. Noel Rogers, an orthopedic surgeon, for an approved second opinion on 3 September 1999. After this second opinion, Dr. Rogers saw plaintiff at least two additional times. Based upon what plaintiff reported to him, Dr. Rogers diagnosed a severed femoral nerve, although he deferred to the opinion of the surgeon who operated on plaintiff with respect to whether the femoral nerve was actually severed in the accident. Dr. Rogers has also indicated that plaintiff could have suffered from a severed quadriceps muscle, and that a severed quadriceps muscle could cause quadricep weakness and an altered gait.
9. Dr. Rogers based his diagnosis upon plaintiff's history, and upon testing for strength, observing plaintiff's gait, and measuring the circumference of plaintiff's legs. Dr. Rogers did not perform or order any electrodiagnostic or other tests or studies. The examination performed by Dr. Rogers was primarily subjective, and even the difference in circumference of plaintiff's legs is subject to interpretation by differing doctors, with Dr. Delaney finding the difference to be insignificant while Dr. Rogers found it significant.
10. Dr. Rogers found plaintiff to be at maximum medical improvement and assigned permanent work restrictions in April 2000. Dr. Rogers also assigned a 19% permanent partial impairment rating, based upon AMA guidelines. Dr. Rogers has not assigned a rating based upon the Industrial Commission guidelines. Dr. Rogers also indicated that plaintiff does not need a knee brace, and Dr. Rogers did not refer plaintiff to a neurosurgeon or a neurologist, or recommend further physical therapy and/or work-hardening.
11. In the course of his 30 year medical experience, Dr. Rogers has never had a case involving a possible femoral nerve transaction prior to seeing plaintiff. Dr. Rogers only saw plaintiff on three occasions, and it does not appear that Dr. Rogers offered any treatment to plaintiff during this period of time. Furthermore, Dr. Rogers based his opinions primarily on subjective testing. In contrast, Dr. Delaney treated plaintiff on more occasions than did Dr. Rogers, and Dr. Delaney ordered a course of aggressive physical therapy. Also, Dr. Delaney estimated that he has treated 500 patients with nerve injuries relating to lacerations. Finally, Dr. Delaney's opinions with respect to plaintiff's abilities were based on objective as well as subjective testing, including electrodiagnostic testing which confirmed his diagnoses and opinions. For these reasons, the opinions of Dr. Delaney are afforded greater weight than those expressed by Dr. Rogers.
12. The Commission finds that the job as carpenter/hardware installer was within plaintiff's capabilities and was suitable employment. Plaintiff's refusal to accept this job offer was unjustified.
13. As of the date of the hearing before the Deputy Commissioner plaintiff had not returned to work, but was actively seeking employment as an electrical engineer.
14. Plaintiff is not in need of further or ongoing medical treatment at this time.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his left leg on 21 July 1998. N.C. Gen. Stat. § 97-2(6). Defendants admitted liability for this injury pursuant to a Form 60. A Form 60 does not give rise to a presumption of disability. Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
2. The position of carpenter/hardware installer was within plaintiff's physical capabilities and plaintiff's refusal to accept this position after 3 December 1998 was not justified. Therefore, plaintiff is entitled to no compensation during the continuation of such refusal. N.C. Gen. Stat. § 97-32.
3. The medical treatment provided by Drs. Harshman, Delaney and Rogers was reasonable and medically necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. However, the doctors are unanimous that plaintiff is not in need of further or ongoing medical treatment. Accordingly, plaintiff has not raised good grounds to change his authorized treating physician to Dr. Rogers.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendants are entitled to suspend plaintiff's disability compensation as of 3 December 1998 for his unjustifiable refusal of suitable employment until such time as plaintiff ceases such refusal.
2. Plaintiff is not in need of ongoing or future medical treatment as of the filing of this opinion. Moreover, Dr. Delaney's treatment of plaintiff was appropriate and aggressive, and led to plaintiff's recovery from his compensable injury by accident. Accordingly, plaintiff's motion to change treating physician to Dr. Rogers is DENIED at this time.
4. For the reasons set forth in this Opinion and Award, plaintiff's motion for attorney's fees is HEREBY DENIED.
5. Each side shall bear its own costs of this proceeding.
This the ___ day of December 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/mhb